**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| TIONNE JOHNSON, | | |
| Plaintiff, | * | |
| | | |
| v. | * | Civil No. ELH-15-2013 |
| | | |
| WEINSTEIN, WEINBURG, & FOX, LLC, et al., | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned to review plaintiff's Motion for Default Judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. (ECF No. 24.) Currently pending is plaintiff's Motion for Default Judgment ("Motion") (ECF No. 23). No hearing is necessary.[1] See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons discussed below, I respectfully recommend that plaintiff's Motion (ECF No. 23) be GRANTED and that relief be awarded as set forth herein.

## I.    Procedural Background

Plaintiff filed her original Complaint[2] against Weinstein, Weinburg & Fox, LLC ("WWF") and John Doe a/k/a Alex Martin a/k/a Darron Tillison ("Tillison" or "Mr. Tillison")[3] (collectively "defendants") on July 9, 2015 (ECF No. 1). Defendant WWF was served with

---

[1] See Part III, below.

[2] The now-operative pleading is plaintiff's Amended Complaint, filed on December 9, 2015. (ECF No. 12.)

[3] As it is now known that the surname of the Doe defendant is "Tillison," he will be referred to accordingly. See ECF No. 26 (correspondence from "Darren Tillison") and ECF No. 28 (correspondence from "Daron Tillison"). As set forth below, judgment should be entered against "Darren Tillison a/k/a Darron Tillison a/k/a Daron Tillison."

process on August 26, 2015.  (ECF No. 6.)  Defendant Tillison was served with process on January 27, 2016.  (ECF No. 18.)     Neither defendant has responded to the Complaint. Accordingly, the clerk of court entered separate Orders of Default against WWF on September 21, 2015 (ECF No. 10) and against Tillison on February 23, 2016 (ECF No. 21).

On May 10, 2016, the Clerk of Court docketed a letter from defendant WWF dated May 4, 2016 and written by co-defendant "Darren Tillison." (ECF No. 26.)  In the letter, Mr. Tillison represents himself to be the certified agent of WWF and requests on WWF's behalf that the court deny plaintiff's Motion or, in the alternative, allow defendants an additional one hundred twenty (120) days to reply to plaintiff's motion.  (Id.)  In light of the Fourth Circuit's strong preference that "default should be avoided and that claims and defenses be disposed of on their merits," Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010), the court directed defendants to "demonstrate good cause for the court to vacate the clerk's entry of default as to each defendant" by June 1, 2016.  (ECF No. 27.)

On May 31, 2016, defendant Tillison contacted the undersigned's chambers by telephone and requested additional time to respond to the court's May 11, 2016 Order.  (ECF No. 27.)  Mr. Tillison was advised that any request must be made in writing to the Court and that, pursuant to Local Rule 101.1(a), defendant WWF must be represented by counsel.

The Clerk of Court subsequently received an unsigned, undated letter from Mr. Tillison on June 3, 2016.  The letter did not contain an original signature, and a certificate of service was not affixed to the letter.  Accordingly, Judge Hollander rejected this letter as deficient.  (ECF No. 28.)  On June 6, 2016, the Clerk of Court received an unsigned letter, dated May 31, 2016, from Tyra Tillison, who represented herself to be the resident agent for defendant WWF.  The letter did not contain an original signature, and a certificate of service was not affixed to the letter.

(ECF No. 29.)  Consequently, Judge Hollander rejected this letter as deficient.[4]  As neither defendant has moved to vacate the Entry of Default, and as both defendants failed to comply with the court's May 11, 2016 Order (ECF No. 27), both defendants remain in default, and plaintiff's Motion is ripe for adjudication.

In order to determine an appropriate award of damages in this case, the undersigned directed plaintiff to file a supplemental memorandum, accompanied by affidavits and/or documentary evidence, in support of its request for an award of actual damages.  (ECF No. 30.)  Plaintiff filed her Supplemental Memorandum ("Memorandum") and Motion for Attorneys' Fees on June 27, 2016.  (ECF Nos. 32, 31.)

## II.    **Plaintiff's Factual Allegations**

A common set of facts supports each of the causes of action set forth in plaintiff's Complaint.  (ECF No. 12.)  By virtue of the clerk's entry of default, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).

WWF is a limited liability company, organized under the laws of Delaware, which is in the business of collecting debts and regularly attempts to collects debts owed to another.[5]  (ECF No. 12 at ¶ 4.)  Plaintiff asserts that on or about July 1, 2014, she received a letter from defendant WWF seeking to collect on a debt allegedly owed by plaintiff.  (ECF No. 32-1 at 3.)  Plaintiff alleges that approximately two weeks after receiving the letter, an individual who identified himself as "Alex Martin" began contacting her two to four times per day by telephone in order to

[4] Nor, it should be noted, does it appear that Ms. Tillison is a member of the bar of this court.  Consequently, Ms. Tillison is unable to represent the defendant LLC in this action.  See Loc. R. 101.1(a).

[5] Plaintiff states in its Supplemental Memorandum that WWF is "a debt collection company with a name like a law firm."  (ECF No. 32 at 1.)

attempt to collect on the debt.  (ECF No. 12 at ¶ 7.)  Plaintiff alleges that defendants' activities lasted for approximately eight days—from July 15 through July 23, 2014.  (Id.)  The individual who identified himself as "Alex Martin" was in fact defendant Darren Tillison, an employee of WWF.[6]  (Id. at ¶ 5.)  During these calls, defendant Tillison threatened to press charges of fraud against plaintiff.  (Id. at ¶ 8.)  Plaintiff further alleges that defendant Tillison contacted plaintiff's employer, plaintiff's mother, plaintiff's father, and one of plaintiff's friends as part of his collection activities.  (ECF No. 12 ¶¶ 9-11.)  When speaking with these individuals, defendant threatened that plaintiff "could be facing jail time," the loss of her phlebotomy licensure, and the loss of her job for failure to pay the alleged debt.  (Id.)  On or about July 21, 2014, plaintiff requested that defendant cease contacting plaintiff, her family, and her friends.  (Id. at ¶ 12.)  Nevertheless, defendant continued to contact plaintiff for two more days.[7]  Plaintiff alleges that she "suffered undue stress, mental anguish and embarrassment in front of her family and friends" as a result of defendants' conduct.  (Id. at ¶ 13.)

### III.    Legal Standard for Entry of Default Judgment

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F. 3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  Id.  If the court determines that liability is established, the court must then determine the appropriate amount of damages.  Id.  The court does not accept factual allegations regarding damages as true, but rather

---

[6] See footnote 3, above.

[7] Accepting as true the dates indicated in the complaint, plaintiff alleges that defendants' conduct lasted from July 15 through July 23, 2014.  (ECF No. 12 at ¶ 7.)   If plaintiff requested that defendants cease contacting her, her family, and her friends on July 21, then defendants persisted in their behavior for two days.  (Id. at  ¶ 12.)

must make an independent determination regarding such allegations.  See, e.g., Credit Lyonnais

Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154-155 (2d Cir. 1999).  The court "is not required

to conduct an evidentiary hearing to determine damages, and may instead rely on affidavits or

documentary evidence in the record to determine the appropriate sum."  Liversage v. Nationwide

Debt Mgmt. Sols., LLC, No. ELH-15-1266, 2016 WL 106301, at *2 (D. Md. Jan. 11, 2016).  See

also Monge v. Portofino Ristorante, 751 F. Supp. 2d 789, 794-95 (D. Md. 2010); Trustees of the

Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc., Civ. No. ELH-11-832, 2011 WL

5151067, at *4 (D. Md. Oct. 27, 2011).


**IV.   Defendants' Liability**

**A.   Fair Debt Collection Practices Act ("FDCPA")**

To state a claim under the FDCPA, a plaintiff must allege that: (1) they were the object of the

collection activity arising from consumer debt; (2) defendants are debt collectors as defined by

the FDCPA; and (3) defendants engaged in an act or omission prohibited by the FDCPA.

Stewart v. Bierman, 859 F. Supp. 2d. 754, 759 (D. Md. 2012).  In her Complaint, Motion, and

Memorandum, plaintiff has sufficiently alleged that she was the object of consumer debt

collection activity and that defendants WWF and Tillison[8] are "debt collectors" within the

meaning of the FDCPA.  15 U.S.C. § 1692a.  (ECF No. 12 at ¶¶ 4-6.)

---

[8] See Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 777-79 (E.D.N.C. 2011) (finding that individual employees of a debt collection agency may also be held liable for violations of the FDCPA).  See also Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50102 (Dec. 13, 1988) (defining "debt collector" to include "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owned another").

With respect to the third element, plaintiff alleges that defendants WWF and Tillison engaged in a series of acts and omissions in violation of §1692c(b), §1692e(2)(A), §1692e(5), §1692e(10), and §1692d(5).  (ECF No. 12 at ¶ 15.)

Section 1692c(b) of the FDCPA prohibits debt collectors from communicating with most third parties regarding an individual's debt without the debtor's consent.  15 U.S.C. § 1692c(b). By contacting plaintiff's mother, father, and friends regarding plaintiff's alleged debt, defendant violated the FDCPA.  (ECF No. 12 at ¶¶ 9-11.)

Under §1692e of the FDCPA, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Without limiting this rule, the statute expressly prohibits the false representation of "the character, amount, or legal status of any debt."  15 U.S.C. §1692e(2)(A).  §1692e(5) provides that "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" constitutes a violation of the FDCPA.  15 U.S.C. §1692e(5).  In addition, §1692e(5) prohibits "[t] he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  By threatening to press fraud charges against plaintiff and by falsely representing that plaintiff could be incarcerated, lose her phlebotomy licensure, or lose her job as a result of non-payment of the alleged debt, defendants violated §1692e of the FDCPA.  (ECF No. 12 at ¶¶ 8-11.)

Section 1692d(5) makes it a violation of the FDCPA to "[c]aus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).  Here, defendants contacted plaintiff by telephone two to four times daily over an eight day period.  (ECF No. 12 at

¶ 7.)  During that time, defendants continued to engage in such conduct even after plaintiff requested that they stop doing so.  (Id. at ¶ 13.)  Accordingly, defendants violated § 1692d(5).

Plaintiff has sufficiently stated a cause of action against defendants WWF and Tillison for violations of the FDCPA, and entry of default judgment is appropriate.

### B.  Maryland Consumer Debt Collection Act ("MCDCA")

The MCDCA, codified at Md. Code, Com. Law § 14–201, et seq., "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts."  Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 594 (D. Md. 1999).  Plaintiff alleges that defendants WWF and Tillison violated § 14–202(2), § 14–202(5), § 14–202(6), and § 14–202(8) of the MCDCA.  (ECF No. 12 at ¶ 18.)

Under the MCDCA, a debt collector may not "[t]hreaten criminal prosecution, unless the transaction involved the violation of a criminal statute."  Md. Code Ann., Com. Law § 14-202(2).  There is no evidence that the alleged debt defendants sought to collect was based on the violation of a criminal statute.  Thus, by informing plaintiff's father and friend that plaintiff "could be facing jail time" for failure to pay the debt, defendants violated the MCDCA.  (ECF No. 12 at ¶ 11.)

The MCDCA also prohibits "[c]ommunicat[ing] with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor."  Md. Code Ann., Com. Law § 14-202(6).  Defendants contacted plaintiff by telephone two to four times daily over a two week period—and continued to do so even after plaintiff requested that they stop doing so.  (ECF No. 12 at ¶¶ 7, 13.)  Defendants' persistent calling reasonably can be expected to harass the debtor and therefore constitutes a violation of the MCDCA.

Section 14-202 also prohibits a debt collector from communicating with most persons other than the debtor regarding an alleged debt. Md. Code Ann., Com. Law § 14–202(5). Here, defendants contacted plaintiff's mother, father, and friends regarding plaintiff's alleged debt. (ECF No. 12 at ¶¶ 9-11.) However, plaintiff has not alleged that defendants had "**knowledge that** the other person does not have a legitimate business need for the information." Md. Code Ann., Com. Law § 14–202(5) (emphasis added). Accordingly, plaintiff has not sufficiently alleged a violation of this subsection of the MCDCA.

Similarly, plaintiff has not alleged that defendants acted with the requisite knowledge to violate § 14-202(8) of the MCDCA. This section provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right **with knowledge that the right does not exist**." Md. Code Ann., Com. Law § 14-202(8) (emphasis added). Here, plaintiff alleges that defendants "threatened to press charges of fraud against Plaintiff." (ECF No. 12 at ¶ 8.) As plaintiff has not alleged that defendants had "knowledge that the right does not exist," however, plaintiff has not sufficiently stated a claim under § 14-202(8).

Thus, while plaintiff has not sufficiently alleged violations of § 14-202(5) and § 14-202(8), she is nonetheless entitled to entry of default judgment on her MCDCA claim based on defendants' violation of § 14-202(2) and § 14-202(6) of the statute.

### C. Maryland Consumer Protection Act ("MCPA")

Plaintiff also asserts a claim against defendants under the MCPA, which proscribes "[u]nfair or deceptive trade practices." Md. Code Ann., Com. Law § 13–301, et seq. A party is per se liable under the MCPA for any violation of the MCDCA. Md. Code Ann., Com. Law § 13–301(14)(iii). See Peckey v. Bank of Am., N.A., 2015 WL 1622967, at *6 (D. Md. Apr. 10, 2015). Plaintiff's claim under the MCPA is predicated on this per se rule. (ECF No. 12 at ¶ 19.)

Having found that plaintiff is entitled to judgment against defendants WWF and Tillison on her MCDCA claim, so, too, do I conclude that plaintiff has stated a claim under the MCPA.  Thus, plaintiff has asserted factual allegations that constitute a legitimate cause of action against defendants WWF and Tillison for violations of the FDCPA, MDCDCA, and MCPA, and entry of default judgment is proper.

### V.      Plaintiff's Damages

As plaintiff has proven defendants' liability, the undersigned now undertakes an independent determination of the damages to which plaintiff is entitled.  A prevailing plaintiff under the FDCPA may recover damages for any actual injuries sustained, as well as up to $1,000.00 in statutory damages, as determined by the court.[9]  15 U.S.C. § 1692k.  In determining the appropriate amount of statutory damages to be awarded in a particular case, a court shall consider, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).  "The maximum statutory damage award is only assessed in cases where there [have] been repetitive, egregious FDCPA violations and even in such cases, the statutory awards are often less than $1000." Liversage v. Nationwide Debt Mgmt. Sols., LLC, No. ELH-15-1266, 2016 WL 106301, at *3 (D. Md. Jan. 11, 2016) (quoting Ford v. Consigned Debts & Collections, Inc., 2010 WL 5392643 at *5 (D. N.J. Dec. 21, 2010)).

Here, plaintiff's Complaint seeks $50,000.00 in actual damages for the emotional distress caused by defendants' conduct.  (ECF No. 12 at 5.)  In her Memorandum, however, plaintiff

---

[9] The state law causes of action alleged also allow plaintiffs to recover actual damages and attorney's fees.  See Md. Code, Com. Law § 14-203; Md. Code, Com. Law § 13-408.  As plaintiff may collect such damages and fees only once, I need not address plaintiff's damages under the Maryland statutes.

requested $1,000.00 in statutory damages and "several thousand dollars" in actual damages. (ECF No. 32 at 2.)  Although plaintiff has sufficiently alleged—and is therefore entitled to—a monetary award, I recommend a more limited figure in light of the injuries actually sustained.

Plaintiff's injuries were caused by the two to four daily telephone calls from defendants over a roughly eight day period in July 2014.  (ECF No. 32-1 at 3-5.)  In her sworn affidavit, plaintiff states that she is a single mother of three children, whom she supports by her work as a phlebotomist and with food stamps.  (Id. at 4.)  Defendant's conduct caused plaintiff to be "anxious, nervous, afraid, worried [and] terrified," as defendant's threats of incarceration or loss of employment would, if realized, have left plaintiff and her children destitute.  (Id.)  As the alleged debt was related to a bail bond that plaintiff borrowed for a family member, defendant's threat of incarceration "seemed very real."  (Id.)  Defendants' threats caused plaintiff to have difficulty sleeping and to be emotionally distressed.  (Id.)  Moreover, plaintiff was "embarrass[ed] and humiliate[ed]" by the calls made by defendants to plaintiff's friends and family.  (ECF No. 32-1 at 5.)

While defendants' conduct was no doubt offensive and capable of causing emotional distress, there is no evidence that plaintiff received medical treatment as a result of defendants' conduct.  Moreover, there is no evidence of any ongoing, adverse effects of defendants' conduct. Thus, in light of the limited duration of the emotional distress sustained by plaintiff, I recommend an award of **$3,500.00** in actual damages.  This award is consistent with cases alleging similar violations of the FDCPA and recognizes the additional embarrassment caused by defendants' harassing calls to plaintiff's mother, father, and friends.  In addition, I recommend an award of statutory damages in the amount of **$750.00**.  While defendants' conduct was undoubtedly offensive, its effects were not so great as to warrant the maximum statutory award.

See Thomas v. Smith, Dean & Associates, Inc., No. ELH-10-3441, 2011 WL 2730787, at *4 (D. Md. July 12, 2011) (report and recommendation adopted Aug. 10, 2011) (awarding $1,500.00 in actual damages and $500.00 in statutory damages where plaintiff suffered three days of stress and humiliation from defendant's wrongful phone calls to plaintiff and her employer regarding plaintiff's debt); Wilson v. Turner, No. ELH-13-3497, 2016 WL 825694, at *1 (D. Md. Mar. 3, 2016) (report and recommendation adopted Mar. 3, 2016) (awarding $2,500.00 in actual and $500.00 in statutory damages to the alleged debtor plaintiff for emotional distress suffered as a result of phone calls made by defendants over a week-long period).

## VI.    Attorney's Fees and Costs

The prevailing plaintiff in a successful action under the FDCPA and the state law causes of action alleged is entitled to an award of reasonable attorney's fees and costs.  15 U.S.C. § 1692k(a)(3).  See Thomas, 2011 WL 2730787, at *6 (citing Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir.1995)).  Typical awards of attorney's fees for cases brought under the FDCPA and related state consumer protection statutes have been "in the general range of $2100.00--$4300.00 to compensate for total attorney hours ranging from 13-21 hours worked." Thomas, 2011 WL 2730787 at *7.  Here, plaintiff requests $8,400.00 in attorney's fees for twenty-one (21) hours of work performed.  (ECF No. 31 at 1).[10]

In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate.  Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549

---

[10] While counsel for plaintiff has entitled its fee request as "Plaintiff's Motion for Attorneys' Fees and Costs," neither the motion, nor the accompanying memorandum, nor the exhibits states a request for costs.  (See ECF No. 31.)  Accordingly, no costs will be awarded.

F.3d 313, 320-21 (4th Cir. 2008).  The plaintiff must demonstrate that "the number of hours for which [it] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary."  <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 2011 WL 2552472, at *3 (D. Md. Jan. 24, 2011) (internal quotation marks omitted).

Plaintiff's counsel has submitted timesheets reflecting twenty-one (21) hours of work performed over the past year.  (ECF No. 31-2 at 8-11.)  While the time spent working on this case was generally reasonable, I find that the over 2.4 hours spent working on the request for attorney's fees was excessive in light of the total number of hours of work performed in this case.  (ECF No. 31-2 at 10-11.)  Accordingly, I will reduce the number of hours awarded for work on the request for attorney's fees from 2.4 hours to 0.4 hours.  The fee award, therefore, will be based on a total of nineteen (19) hours worked.  The $400.00 hourly rate requested is reasonable and within the guidelines set forth in the Local Rules for lawyers with over twenty (20) years of experience.  <u>See</u> Loc. R. App'x B(3).  Multiplying the number of hours worked by the $400.00 hourly rate, plaintiff is entitled to an award of **$7,600.00** in attorney's fees.

### VII.   <u>Conclusion</u>

For the foregoing reasons, I respectfully recommend that:

1.   The Court GRANT plaintiff's Motion for Default Judgment (ECF No. 23);

2.   The Court award plaintiff **$750.00** in statutory damages;

3.   The Court award plaintiff **$3,500.00** in actual damages;

4.   The Court award plaintiff **$7,600.00** in attorney's fees;

5.      The Court ENTER default judgment jointly and severally against defendants Weinstein, Weinburg & Fox, LLC and Darren Tillison a/k/a Daron Tillison a/k/a Darron Tillison in the amount of **$11,850.00**.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants at the addresses listed on plaintiff's Amended Complaint.  (ECF No. 12.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:   July 13, 2016                                        _____/s/_____

                                                            Beth P. Gesner
                                                            United States Magistrate Judge

13